FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 NOV 21 P 12:52

CLERK'S OFFICE
AT BALTIMORE

BY ——— DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LLOYD GEORGE MAXWELL *

Petitioner *

v. * Civil Action No. JKB-11-3190

UNITED STATES OF AMERICA *

Respondents *

***

**MEMORANDUM**

The above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 was filed on November 8, 2011. ECF No. 1. Petitioner Lloyd George Maxwell ("Maxwell") seeks a writ of error coram nobis with respect to a criminal conviction in this court. *See United States v. Maxwell*, Crim. No. HM-87-371 (D. Md. 1987), *aff'd*, 889 F.2d 1085 (4th Cir. 1989). For the reasons following, the petition must be dismissed.

Maxwell alleges that trial counsel rendered ineffective assistance of counsel when she advised him not to plead guilty and to proceed to trial. Counsel did not advise him of the possibility that he could be deported.[1] After a jury trial, Maxwell was found guilty of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute 500 grams or more of cocaine, and sentenced to five years imprisonment with four years' special parole. Maxwell asserts that had he entered the plea agreement he would not have been subject to deportation. ECF No. 1 at pp. 2–3. With respect to the proposed plea agreement, Maxwell states only that the prosecutor's offer was premised on his providing the government with information about whom the drugs belonged to in exchange for a lesser offense. *Id.* at p. 2. Additionally, Maxwell suggests that if counsel had advised him of a deportation risk or "he had known of

[1] Maxwell was deported to Jamaica, where he now resides, on December 30, 2010. ECF No. 1 at p. 3.

probable immigration consequences of going to trial," he would have taken the plea agreement.[2] *Id.*

Maxwell also provides that while he was serving the four-year parole supervision imposed by this court, he was sentenced by the United States District Court for the Eastern District of Virginia to 240 months imprisonment, with five years' supervision upon release. He claims the Virginia offense was a "second enhanced" offense which does not expire until 2015. ECF No. 1 at p. 3; *see United States v. Maxwell*, Criminal No. 93-262.1 (E.D. Va.). Maxwell claims that trial counsel's deficient performance in Criminal No. HM-87-371 caused him to receive longer terms of imprisonment in the Virginia case. ECF No. 1 at p. 3. He also states, without explanation, that he probably would not have been deported if he had not received an enhanced sentence. *Id.*

A writ of error coram nobis is an "extraordinary remedy available only under circumstances compelling such action to achieve justice" or to correct errors "of the most fundamental character." *United States v. Morgan*, 346 U.S. 502, 511 (1954). Federal courts may grant relief from a conviction by way of coram nobis after a petitioner has completed the sentence at issue. *See* 28 U.S.C. § 1651 (2006); *Morgan*, 346 U.S. at 512-13. Coram nobis is available only to remedy "factual errors material to the validity and regularity of the legal proceeding itself." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal quotation marks omitted). This extraordinary writ is used where "no other remedy may be available," and an "error of the most fundamental character" must have occurred. *United States v. Mandel*, 862

[2] Maxwell filed a motion to vacate pursuant to 28 U.S.C. § 2255 which was denied on November 8, 1996. *See United States v. Maxwell*, Crim. No. HM-87-371 (D. Md. 1987) at docket entries 97 and 98. Subsequently, his appeal from the denial of the motion was dismissed as untimely. *See United States v. Maxwell*, 139 F.3d 895 (4th Cir. 1998) (Unpublished). Maxwell filed several successive motions to vacate as well as petitions for writ of mandamus and for coram nobis, all of which were denied. *See Maxwell v. Drug Enforcement Admin.*, Civ. Action L-00-2389 (D. Md. 2000); *Maxwell v. United States*, Civ. Action L-02-738 (D. Md. 2002); *Maxwell v. United States*, Civ. Action No. L-03-3178 (D. Md. 2003); and *Maxwell v. United States*, Civ. Action MJG-09-114 (D. Md. 2009).

F.2d, 1067, 1075 (4th Cir. 1988). Coram nobis relief may be granted "in light of a retroactive dispositive change in the law" which undermines the basis for a prior conviction. *Id.* The Supreme Court has stated that "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." *Carlisle*, 517 U.S. at 429.

To be entitled to coram nobis relief, a petitioner must demonstrate that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. Bazuaye*, 399 Fed. Appx. 822, 2010 W.L. 4366456, at * 1 (4th Cir. 2010) (unpublished), citing *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir. 1987).

Maxwell claims that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480–81 (2010), entitles him to coram nobis relief because, like the defendant in *Padilla*, he was not advised of deportation consequences. ECF No. 1 at pp. 3–6. The Supreme Court in *Padilla* held in part that "prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Padilla,* 130 S. Ct. at 1483. The Court went on to observe that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction" rendering his deportation presumptively mandatory in light of his guilty plea. *Id.* Thus counsel's failure to advise of the deportation consequences of the guilty plea was ineffective assistance of counsel in violation of Padilla's Sixth Amendment rights. *See id.* ("when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.").

The Supreme Court's holding in *Padilla* effectively changed the law in nine circuits. Every circuit to have addressed the issue prior to the Supreme Court's decision had concluded

that deportation is a collateral consequence of a conviction and counsel is not ineffective for neglecting to warn the client about the potential immigration consequences of conviction. *See United States v. Gonzalez,* 202 F.3d 20 (1st Cir. 2000); *United States v. Santelises,* 476 F.2d 787 (2d Cir. 1973); *United States v. Del Rosario,* 902 F.2d 55 (D.C. Cir. 1990); *United States v. Yearwood,* 863 F.2d 6 (4th Cir. 1988); *United States v. Banda,* 1 F.3d 354 (5th Cir. 1993); *United States v. George,* 869 F.2d 333 (7th Cir. 1989); *United States v. Fry,* 322 F.3d 1198 (9th Cir. 2003); *Broomes v. Ashcroft,* 358 F.3d 1251 (10th Cir. 2004); *United States v. Campbell,* 778 F.2d 764 (11th Cir. 1985)). These holdings provide strong support for the proposition that *Padilla* announced a new rule.

On its face, there is nothing in the *Padilla* decision to indicate it is retroactively applicable to cases on collateral review. *See United States v. Hernandez-Monreal,* 2010 WL 5027195, at *2 & n. (4th Cir. 2010). In *Teague v. Lane,* 489 U.S. 288 (1989) and subsequent cases, the Supreme Court laid out the framework for determining when a rule announced in one of its decisions should be applied retroactively in criminal cases that are already final on direct review. Under *Teague*, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting,* 549 U.S. 406, 416 (2007) (quoting *Griffith v. Kentucky,* 479 U.S. 314 (1987)).

In general, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. *See Teague*, 489 U.S. at 301. It does not appear that the *Padilla* decision was dictated by precedent existing at the time petitioner's conviction became final. The majority writing for the Court in *Padilla* noted that immigration laws had dramatically changed over the years, raising the stakes of an alien's (noncitizen's) criminal conviction, and it was responding to those changes brought about by the

limitations imposed on a judge's discretionary authority to afford relief from removal. Although the Court did not indicate whether it was creating a new rule of law, it did express concern about recognizing "new grounds" for attacking the validity of guilty pleas.[3] *Padilla*, 130 S. Ct. at 1485. Whether *Padilla* applies retroactively or not, this court declines to grant coram nobis relief under a Sixth Amendment analysis because it is clear that it does not apply to Maxwell's case.

Unlike the defendant in *Padilla*, Maxwell did not plead guilty; thus, his trial counsel was not remiss in failing to tell him a guilty plea could result in his deportation. To establish ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A showing of prejudice requires that (1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See id.* at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. A determination

[3] Indeed the language in *Padilla* suggests that the Justices recognized the novelty of its holding. *See Padilla*, 130 S. Ct. at 1486 ("[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation."). In his concurring opinion, Justice Alito noted, "[T]his Court has never held that a criminal defense attorney's Sixth Amendment duties extend to providing advice about [collateral consequences of a conviction]." *Id.* at 1488.

need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

Maxwell's trial counsel was not deficient in failing to advise him of deportation consequences because she advised him to proceed to trial. Even if counsel had advised him of deportation consequences emanating from the Maryland conviction, his subsequent conviction for the same offense would have been sufficient grounds for his deportation; thus, he cannot establish he was prejudiced by the alleged deficiency. Given the absence of "factual errors material to the validity and regularity of the legal proceeding itself," *Carlisle*, 517 U.S. at 429, there is no basis to issue the extraordinary relief contemplated by the writ of error coram nobis. By separate order the petition will be dismissed.

11/18/11
Date

James K. Bredar
United States District Judge